UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Norman E. Seegert,

        Plaintiff,

                                **MEMORANDUM OPINION AND ORDER**
v.                                     Civil No. 09-699 ADM/RLE

Monson Trucking, Inc., a Minnesota
corporation,

        Defendant.

_____

Steven A. Smith, Esq., and Megan I. Brennan, Esq., Nichols Kaster, PLLP, Minneapolis, MN on behalf of Plaintiff.

David J. Duddleston, Esq., and Sara G. Sidwell, Esq., Jackson Lewis LLP, Minneapolis, MN on behalf of Defendant.
_____

## I. INTRODUCTION

On April 12, 2010, the undersigned United States District Judge heard oral argument on Defendant Monson Trucking, Inc.'s ("Monson") Motion for Summary Judgment [Docket No. 49]. Plaintiff Norman E. Seegert ("Seegert") asserts claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-64, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01-.41, as well as a state-law claim of promissory estoppel. For the reasons stated below, Monson's motion is denied.

## II. BACKGROUND[1]

Monson hired Seegert as a full-time truck driver in July 2007. Notice of Removal

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

[Docket No. 1], Ex. 1 (Compl.) ¶ 7. Seegert voluntarily left Monson's employ in July 2008 and was rehired for the same position in September 2008. Compl. ¶¶ 10-11. On approximately January 28, 2009, Seegert enrolled in a treatment facility for alcoholism. Id. ¶ 13. Before checking into the facility, Seegert informed Monson of his forthcoming 28-day absence to ensure that his employment would not be in jeopardy and to confirm that his leave would be covered under the FMLA. Id. ¶ 14. Seegert spoke with an employee in the personnel department, Judy Lowell ("Lowell"), who informed him that he would not be terminated because of his absence. Id. ¶ 15.

On approximately January 29, 2009, Monson sent Seegert a letter notifying him that he was not eligible for FMLA leave and was terminated because he was "unavailable for work." Id. ¶ 16. Upon receipt of the letter, Seegert contacted Monson and was again informed that he was not eligible for FMLA leave and his employment was terminated. This lawsuit followed.

## A. Seegert's History of Drug and Alcohol Abuse

Seegert's deposition testimony confirms that he has a history of drug and alcohol abuse, that he has been medically evaluated for chemical dependency, and that he has been found in need of treatment.

> Q: [A]s of 7/13/95, you don't dispute that you were evaluated for chemical dependency and you were found that you needed issues and treatment for alcohol dependence and cocaine dependence, that you, in other words, had an alcohol and a cocaine abuse problem, you don't dispute that, do you?
>
> A: No.
>
> . . .
>
> Q: And in 2000, when you were being treated, you were being treated both for alcoholism and cocaine addiction?

> A: Correct. Yes.

Sidwell Decl. [Docket No. 55] Ex. A (Seegert Dep.) at 350-51, 355; Ex. 36 (Koochiching Counseling Center Diagnostic Assessment).

In 2001, preceding his first period of employment with Monson, Seegert was arrested and charged with third degree possession of methamphetamine. Sidwell Decl., Ex. A at 231-33. In 2004, Seegert received treatment for his methamphetamine addiction. Id. at 247-48. In 2005, Seegert violated his probation and was ordered to drug court. Id. at 248-49. While participating in probation mandated by the drug court, he failed two urine analysis tests and was ordered to complete a two-week relapse prevention program.

After being hired at Monson, on September 3, 2008, Seegert was hospitalized for an overdose of methamphetamines. Id. at 134; Ex. M. Following that incident, he admitted to using methamphetamine since mid-August 2008 and was diagnosed with methamphetamine dependence. Sidwell Decl., Ex. M. On January 26, 2009, Seegert was admitted to detox at the Range Medical Health Center and was diagnosed with alcohol dependency. Sidwell Decl., Ex. I. On January 28, 2009, after speaking with Lowell, Seegert entered an inpatient treatment program at Northland Counseling. Ex. A at 284-89. He checked himself out on February 2, 2009 when he learned he would have to pay out-of-pocket for the inpatient treatment expenses. Id.

**B. The DOT Certification**

The DOT regulations at 49 C.F.R. § 391.41 provide the following physical qualifications for drivers:

> (a) A person shall not drive a commercial vehicle unless he/she is

> physically qualified to do so and, except as provided in § 391.67, has on his/her person the original, or a photographic copy, of a medical examiner's certificate that he/she is physically qualified to drive a commercial motor vehicle.
>
> (b) A person is physically qualified to drive a commercial motor vehicle if that person-
>
> . . . .
>
> > (13) Has no current clinical diagnosis of alcoholism.

The DOT regulations require the driver of a commercial motor vehicle be medically examined and certified every two years as physically qualified to operate a commercial motor vehicle. 49 C.F.R. § 391.45 reads:

> Except as provided in § 391.67, the following persons must be medically examined and certified in accordance with § 391.43 as physically qualified to operate a commercial motor vehicle:
>
> > (a) Any person who has not been medically examined and certified as physically qualified to operate a commercial motor vehicle;
> >
> > (b)(1) Any driver who has not been medically examined and certified as qualified to operate a commercial motor vehicle during the preceding 24 months[.]

The examination requires applicants to complete a health history. Seegert, when completing his health history form, responded "No" to the queries "Regular frequent alcohol use" and "Narcotic or habit forming drug use[.]" Sidwell Decl., Ex. A. He so responded on four occasions, twice in 2006, once in 2007 and again in 2009. Id. Medical examiners are required to discuss with the applicant any "Yes" answers, but because Seegert checked "No" to the queries, the certifying medical examiner did not inquire about Seegert's drug and alcohol history.

## III. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. After-acquired evidence

Monson argues that after-acquired evidence of material misrepresentations on Seegert's health history form rendered Seegert unqualified for the commercial truck driver position and, therefore, acts as a complete bar to Seegert's recovery. Monson relies on Frey v. Ramsey County Community Human Services, 517 N.W.2d 591 (Minn. Ct. App. 1994), as authority that after-acquired evidence may bar a discrimination claim.

Seegert responds that Monson is precluded from raising the after-acquired evidence defense because it is an affirmative defense that Monson failed to plead.[2] In Sellers v. Mineta,

---

[2] After Monson learned of Seegert's alleged misrepresentations, a better procedural course would have been for Monson to move to amend the answer for good cause under Rule 16 of the Federal Rules of Civil Procedure. However, because the issue of whether Monson should

5

358 F.3d 1058, 1060-61 (8th Cir. 2004), the Eighth Circuit permitted the defendant to assert an after-acquired evidence defense despite not presenting it to the district court because it learned, during the course of the appeal, information that, had it known at the time the answer to the complaint was filed, would have supported an after-acquired evidence defense. Id. Here, as in Sellers, Monson learned of information relevant to an after-acquired defense during the course of the litigation and after the answer was filed. Furthermore, Monson's answer expressly states that it may have additional affirmative defenses "which cannot be determined until it has an opportunity to engage in discovery" and incorporates such affirmative defenses into its answer. Seegert argues that allowing Monson to raise the issue at this stage in the proceedings prejudices Seegert. However, Seegert has all the information necessary to respond to Monson's allegation that he misrepresented his health history on his DOT certification.

Monson's argument that after-acquired evidence may operate as a complete bar to discrimination claims has been rejected by the United States Supreme Court. See McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 358 (1994). If a plaintiff is able to establish that he was a victim of unlawful discrimination, the after-acquired evidence merely serves to limit his damages. See id. In McKennon, the plaintiff alleged she was terminated in violation of a federal anti-discrimination statute. Id. at 354-55. During the course of discovery, the employer learned that while the plaintiff was still employed at the firm, she had copied and taken home confidential documents in violation of her job duties. See id. at 355. The McKennon court held that after-acquired evidence of employee on-the-job misconduct that would have resulted in the

---

be permitted to raise the after-acquired evidence defense has been fully briefed by both parties, the Court will address the merits of the argument.

6

employee's discharge had the employer known of it did not preclude recovery under the anti-discrimination statute. See id. at 356. Monson argues that McKennon applies only to situations where an initially-qualified employee engages in misconduct and the employer learns of that misconduct post-termination. By contrast, Monson contends, Frey, not McKennon, applies where, as here, the employee commits an act of deceit or misrepresentation to procure the job and is subsequently terminated on separate grounds.

The Frey Court distinguished between three classes of cases: (1) an initially qualified employee commits misconduct that would justify termination regardless of the actual reason for discharge (foreshadowing the facts of McKennon); (2) an employee commits misconduct by lying or submitting a fraudulent resume in the job application process (the facts of Frey and the alleged facts here); and (3) an employee who brings a discriminatory failure to hire claim and who committed misconduct before applying that would have disqualified the applicant from employment. See id. at 597-98. The Frey Court expressly limited its holding to the second category of situations. Id. at 599. Although McKennon dealt with only the first category of cases, each Circuit that has confronted the issue has extended McKennon's holding to include the second category of situations, e.g., cases in which the after-acquired evidence concerns an employee's alleged misrepresentation in the job application process, thus calling into question the continued validity of the holding in Frey. Wallace v. Dunn Constr. Co., 62 F.3d 374, 379 (IV) (11th Cir. 1995) ("[T]he after-acquired evidence rule announced in McKennon applies to cases in which the after-acquired evidence concerns the employee's misrepresentations in a job application or resume, as well as cases in which the after-acquired evidence related to employee wrongdoing during employment."); Shattuck v. Kinetic Concepts, Inc., 49 F.3d 1106 (5th Cir.

7

1995) (applying McKennon to a case in which the employer discovered that the plaintiff had lied about his education on his resume); Wehr v. Ryan's Family Steak Houses, Inc., 49 F.3d 1150, 1152-53 (6th Cir. 1995) (extending McKennon to a case in which the employer discovered that the plaintiff had misrepresented his employment background and medical history on his resume). While the Eighth Circuit has not expressly ruled on this issue, Defendant provides no authority (other than Frey) and the Court is aware of none, in support of departing from the holdings of the other circuits.

Therefore, misconduct by Seegert, which Monson learned of post-termination, does not act as a complete bar to his federal claims or MHRA claim but may be used to limit Seegert's remedy. McKennon, 513 U.S. at 352, 356-57; see also Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 976-80 (approving an after-acquired evidence instruction to the jury in a case asserting a claim of interference with FMLA rights); Lentos v. Hawkins Const. Co., No. 4:07CV3045, 2007 WL 3376760, at *7 n.7 (D. Neb. Nov. 7, 2007) (applying the after-acquired evidence doctrine to a claim under the ADA); Dare v. Wal-Mart Stores, Inc., No. Civ. 02-0001, 2003 WL 21147657, at *5 (D. Minn. May 8, 2003) (applying the after-acquired evidence doctrine to a claim under the MHRA); Doe v. Marshalls, Inc., Civ. Nos. 3-94-463, 3-93-267, 1994 WL 66061, at *3 (D. Minn. Jan. 10, 1994) (holding that the application of the after-acquired evidence doctrine to bar a discrimination claim "is inconsistent with the public policy underlying Title VII and the Minnesota Human Rights Act").

## C. ADA & MHRA

Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such an individual." 42 U.S.C. § 12112(a). To prove a prima facie cause of employment discrimination a plaintiff must demonstrate that (1) he has a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. Dovenmuehler v. St. Cloud Hosp., 509 F.3d 435, 439 (8th Cir. 2007). Similarly, under the MHRA, "it is an unfair employment practice for an employer . . . not to make reasonable accommodation to the known disability of a qualified disabled person." Minn. Stat. § 363A.08, subd. 6. Because such claims are generally analyzed using the same analytical framework - with one exception not relevant here[3] - it is appropriate to consider them together. See Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 784 (8th Cir. 2004).

Monson does not contest alcoholism is a disability covered by the ADA. Crewe v. United States Office of Pers. Mgmt., 834 F.2d 140, 141 (8th Cir. 1987). Thus, Monson does not appear to challenge Seegert's status as a disabled person within the meaning of the ADA. Rather, Monson asserts that Seegert is not qualified to perform the essential functions of the job of a commercial truck driver because the extent of his drug and alcohol use and a current clinical diagnosis of alcoholism preclude DOT certification, which he would not have obtained had he

---

[3] The exception is as follows: under the ADA, disability means "a physical or mental impairment that substantially limits one or more of [an individual's] major life activities. 42 U.S.C. § 12102(2). Under the MHRA, an impairment must materially limit a major life activity, which is a less stringent standard. Liljedahl v. Ryder Student Transp. Servs., Inc., 341 F.3d 836, 841 n.3 (8th Cir. 2003).

9

not made misrepresentations on the health history forms. Seegert responds that he did not misrepresent his drug and alcohol use and he did not have a current clinical diagnosis of alcoholism when he completed the medical examination and requisite health history forms.

If after-acquired evidence alone is sufficient to warrant the grant of summary judgment to a defendant on the issue of whether the plaintiff is a "qualified individual" under the ADA, the after-acquired evidence effectively operates as an absolute bar to relief, running afoul of the principle announced in McKennon. Monson asserts that Seegert was presumptively disqualified for his position as a result of his alleged misrepresentations on the DOT certification. These facts, however, were discovered after Monson terminated Seegert and thus are "after-acquired evidence" that cannot support summary judgment in Monson's favor.

Furthermore, a genuine issue of material fact exists regarding whether Seegert was qualified under the ADA. In the context of a commercial motor vehicle driver, a qualified individual must, among other things, have a medical examiners' certificate indicating that he or she is physically qualified and must not have a "current clinical diagnosis of alcoholism." 49 C.F.R. § 391.41. If, as Monson argues, Seegert falsely checked "No" on his 2006, 2007, and 2009 health history forms in responding to queries regarding "Regular, frequent alcohol use" and "Narcotic or habit forming drug use[,]" then Monson may correctly assert Seegert is not qualified for the position because he was ineligible for the required DOT certification. Similarly, if Seegert had a "current clinical diagnosis of alcoholism" at the time he was certified, then he would not have met the "qualified" prerequisite to a claim under the ADA.

The flaw in Monson's argument is that Seegert testified that he accurately completed the health history forms because he was not engaging in "Regular, frequent alcohol use" or

10

"Narcotic or habit forming drug use" *at the time he completed the forms*. The phrasing of the questions does not include any temporal confines for the responses, e.g. whether the applicant engaged in "Regular, frequent alcohol use in the past one year" or "Narcotic or habit forming drug use in the past one year." Seegert explains that prior to being diagnosed with alcohol dependency in January 2009, Seegert's last clinical diagnosis of alcoholism was in 1995. He testified that he was sober from alcohol from 2001 until April 2007, when he began drinking socially on the weekends, and that it was not until December 2008, that he began drinking more heavily and more regularly. As to Seegert's drug use, he testified that he used methamphetamines for various periods of time in 2004 and 2005 and for a three-week period in 2008. With an understanding that these are the only known instances of Seegert's drug abuse, viewing the facts in the requisite light most favorable to Seegert, the Court cannot conclusively determine that he misrepresented his responses to the ambiguous, poorly worded questions regarding alcohol and drug use. Thus, fact questions exist regarding whether Seegert misrepresented his responses on the health history form or whether Seegert had a current clinical diagnosis of alcoholism, and, therefore, summary judgment is not appropriate on the ADA and MHRA claims.

**D. FMLA**

The FMLA prohibits employers from "interfer[ing] with, restrain[ing] or deny[ing] the exercise of or the attempt to exercise, any right provided [by FMLA]" and from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful [by FMLA]." See 29 U.S.C. § 2615(a). Two types of claims exist under the FMLA: (1) a claim for interference is supported by allegations "that an employer denied or interfered

with [an employee's] substantive rights under the FMLA"; and (2) a claim for retaliation requires an employee to show "that the employer discriminated against him for exercising his FMLA rights." Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006).

**1. Interference**

Seegert maintains that Monson interfered with his FMLA rights by terminating him. In an interference claim, an employee need only show that he was entitled to the benefit denied. Id. "An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave." Id.

Monson argues that an employee who is unable to perform the essential functions of the position is not entitled to leave under the FMLA. In support, Monson cites cases where courts granted summary judgment for the employer when an employee could not return to his pre-FMLA position because he was unable to perform an essential function of the position after exhausting his FMLA leave. See Spangler v. Fed'l Home Loan Bank of Des Moines, 278 F.3d 847, 851 (8th Cir. 2002); Reynolds v. Phillips & Temro Indus., Inc., 195 F.3d 411, 414 (8th Cir. 1999). In Spangler, the Eighth Circuit explained that "the FMLA was designed to protect the employee who is 'unable to perform the functions of the position of the employee' from losing [his] position during the leave period. Essentially, the leave time under the FMLA structure is an opportunity for the employee to treat or attend to the condition rendering [him] unable to perform [his] job." Spangler, 278 F.3d at 851 (citation omitted).

As with the claims of discrimination under the ADA and MHRA, evidence that Seegert was unable to perform the essential functions of his job was discovered after Monson terminated Plaintiff's employment. Therefore, Monson is not entitled to summary judgment on the basis of

this evidence alone. In addition, a fact question exists regarding whether Seegert could perform the essential functions of his job after the exhaustion of his FMLA leave. Seegert entered treatment on January 28, 2009 and left just a few days later after suspecting that his employment was in jeopardy because he was informed that his health insurance would no longer cover the cost of treatment. Sidwell Decl., Ex. A at 289. Seegert had successfully completed treatment for alcoholism once before, and he testified that had he not been terminated, he believes he would have been able to successfully complete alcohol treatment. Again, viewing the evidence in the light most favorable to Seegert, he was not afforded the opportunity to complete a treatment program, at least in part because he was terminated, and return to work. Hence, Monson's argument that Seegert would have been unable to perform an essential aspect of his job after the exhaustion of FMLA leave is not sufficiently supported, and, therefore, summary judgment on Seegert's interference claim is denied.

**2. Retaliation**

The FMLA prohibits employers from discriminating against an employee for asserting his rights under the FMLA. Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002); 29 U.S.C. § 2615(a)(2). "This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action." Darby, 287 F.3d at 679. Basing an adverse employment action on an employee's use of leave is, therefore, actionable. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002).

Defendant argues that Plaintiff's retaliation claim should be dismissed because he has failed to establish that he could perform the essential aspects of the position after exhausting his FMLA leave. Because the Court has rejected those arguments, summary judgment is not

13

appropriate on Plaintiff's retaliation claim.

### 3. Adequate Notice

Defendant argues that Plaintiff failed to give proper notice of his need for FMLA leave. An employee is to provide his or her employer with 30 days notice or as much notice as is practicable of the intention to use FMLA leave when the necessity for leave "is foreseeable." 29 U.S.C. § 2612(e)(2). Less than 30 days notice is permissible for reasons "such as . . . a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency." 29 C.F.R. § 825.302(a). Notice is required "as soon as practicable," meaning "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b). "This ordinarily . . . mean[s] at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." Id. If the need for leave is not foreseeable, the employee "should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

Monson argues that Seegert knew he needed to enter treatment at least as early as mid-December 2008, when he admitted that drinking was becoming a serious issue. Seegert responds that his mother contacted Monson on January 26, 2009, to inform his employer of Seegert's absence and Seegert himself contacted Monson on January 28, 2009, after completing detox and learning that he needed treatment. Monson counters that the evidence is unclear as to whether his mother actually called to report Seegert's expected absence.

Testimony may ultimately prove Seegert's notice was untimely. However, the Court cannot say, as a matter of law, viewing the evidence in the light most favorable to Seegert, that

no genuine issue of material facts exist with regard to appropriate notice. A fact question exists as to whether Seegert's mother called Monson about his absence.

**E. Promissory Estoppel**

Seegert's promissory estoppel claim is premised on the statement of Judy Lowell, an employee in Monson's personnel department, to Seegert before he enrolled in the 28-day alcohol treatment program that he would not be terminated because of his absence. Seegert argues that Monson should have reasonably expected that Lowell's statement would induce Seegert to enter treatment.

Promissory estoppel is an "equitable doctrine that implies a contract at law where none exists in fact." Javinsky v. Comm'r of Admin., 725 N.W.2d 393, 398 (Minn. Ct. App. 2007) (citing Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000)). In Minnesota, promissory estoppel requires that (1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice. See Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142, 152 (Minn. 2001). The third requirement is a question of law in which the court weights public policies in favor of enforcing bargains and preventing unjust enrichment and considers the reasonableness of the promisee's reliance and the extent to which the promisee relied to his or her detriment. See Faimon v. Winona State Univ., 540 N.W.2d 879, 883 (Minn. Ct. App. 1995); Martens, 616 N.W.2d at 746.

As to the first element, viewing the facts in the light most favorable to Seegert, the Court cannot determine as a matter of law that the statements Lowell allegedly made to Seegert, if they were indeed made, are insufficient to constitute a clear and definite promise.

15

Second, if it is determined that a clear and definite promise was made to Seegert, a jury could find Monson should have reasonably expected that Seegert would rely on that promise to his detriment. Seegert asserts that he entered treatment based on Lowell's assertions that his absence would not be a problem. In addition, Seegert asserts that he suffered a detriment because he entered treatment, had to leave treatment after suspecting he had been terminated, and ultimately lost his job in reliance upon Monson's alleged promises. Fact questions exist as to whether these assertions are true, but a jury could find that Seegert acted in reliance upon these representations.

Finally, an injustice would result to Seegert if the promise were not enforced. Monson argues that injustice would result if a promise were inferred because Seegert obtained the job by misrepresenting his history of drug and alcohol use on his DOT certification. As discussed above, fact questions exist as to Seegert's alleged misrepresentations. As such, summary judgment is denied on Monson's promissory estoppel claim.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Monson's Motion for Summary Judgment [Docket No. 49] is **DENIED;**

2. Seegert's Motion to File Supplemental Exhibits [Docket No. 62] is **DENIED.**[4]

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: May 27, 2010.

---

[4] After oral argument, Seegert filed a motion for leave to file supplemental exhibits [Docket No. 62]. Because the Court did not consider Seegert's supplemental exhibits in the disposition of Monson's motion for summary judgment, Seegert's motion is denied as moot.

16